IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| PROSPECT STUDIOS, L.P., ) | Case No. 12-40548 |
| ) | |
| Debtor. ) | |

### ORDER GRANTING APPLICATION BY McDOWELL RICE SMITH & BUCHANAN, COUNSEL FOR DEBTOR, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES

The law firm of McDowell Rice Smith & Buchanan ("MRS&B"), as counsel for Debtor Prospect Studios, L.P., has filed an Application for allowance of compensation for services rendered and for reimbursement of expenses incurred for the period of February 13, 2012 through May 16, 2012. MRS&B also seeks authority to draw down on the prepetition retainer it received from the Debtor to pay its fees. Creditor CSFB 2001-CP4 GLADSTONE COMPLEX LLC ("CSFB") objects to the Application, not to the allowability or reasonableness of the fees, but to the Debtor's use of the retainer as a source of payment because CSFB asserts a perfected security interest in such retainer. For the reasons that follow, CSFB's objection to the Application is OVERRULED, and the Application is GRANTED.

Prior to the commencement of this bankruptcy proceeding, the Debtor engaged MRS&B as counsel to represent it in these proceedings. In conjunction with that engagement, the Debtor provided MRS&B with a prepetition retainer of $25,000,

which MRS&B placed into its trust account. On February 16, 2012, MRS&B filed a voluntary Chapter 11 bankruptcy petition on the Debtor's behalf. The Debtor filed its Application for Authorization to Employ MRS&B as its counsel that same day. On March 14, 2012, this Court granted the Application to Employ MRS&B.

On May 23, 2012, MRS&B filed the instant Application for fees and expenses for the period of February 13, 2012 through May 16, 2012. MRS&B seeks $24,671.50 in fees for professional legal services rendered, and $1,356.54 for actual and necessary expenses, for a total of $26,028.04. Counsel stated at the hearing on the Application that MRS&B will not likely seek additional fees in this case.

No one has objected to MRS&B's application for fees *per se*, and CSFB stated at the hearing that it did not object to the reasonableness of the requested fees. I have reviewed the billing statements attached to MRS&B's Application and find them to be reasonable under 11 U.S.C. § 330(a)(3). Therefore, the Application for fees and expenses in the total amount of $26,028.04 is granted pursuant to 11 U.S.C. § 330(a)(1).

As stated, MRS&B wishes to draw down on the entire prepetition retainer towards payment of those fees, and CSFB does object to that request. CSFB is a secured creditor with a Deed of Trust dated July 31, 2001, and recorded August 1, 2001, on the Debtor's premises commonly known as "Prospect Studios," a 200-unit

apartment complex located at 2440 NE 68th Street in Gladstone, Missouri. The Debtor is a single asset real estate debtor as defined in 11 U.S.C. § 101(51B),[1] and essentially all of its income comes from rents. CSFB's Deed of Trust includes an assignment of leases and rents clause, and the parties executed a separate Assignment of Leases and Rents, which was also recorded with the Recorder of Deeds in Clay County, Missouri. The Debtor has not disputed that these documents were properly recorded, or that CSFB is the current holder of the loan documents. CSFB asserts that the Debtor owes it approximately $8.5 million.

Inasmuch as essentially all of the Debtor's income comes from rents, it appears to be undisputed that MRS&B's retainer came from post-default, prepetition rents collected by the Debtor from its tenants. The crux of this dispute is the nature of CSFB's interest in those prepetition rents after they were collected by the Debtor and then paid over to MRS&B.

CSFB has maintained, and still maintains, that rather than granting it a security interest in the rents, the assignment of rents is a "pure assignment" – such that CSFB actually owns the rents – and that the Debtor was only able to collect and use the rents under a license granted to it by CSFB. CSFB further asserts that, when the Debtor

---

[1] *See Stipulated Order Granting Motion of CSFB 2001-CP4 GLADSTONE COMPLEX, LLC for a Determination that the Debtor is Subject to 11 U.S.C. § 362(d)(3) as Single Asset Real Estate Business Pursuant to 11 U.S.C. § 101(51B)* (Doc. #69).

went into default in about April 2010, the Debtor's license to use the rents was automatically terminated. In other words, CSFB asserts that, under the Deed of Trust and Assignment of Rents, the funds in the MRS&B trust account are its property, and not property of the estate.

However, at an April 2, 2012 hearing on the Debtor's use of cash collateral, I ruled that, despite the loan documents' designation of the assignment as being a "present, absolute and unconditional assignment," and "not an assignment for additional security," the assignment was, in fact, a security interest, primarily because the assignment automatically terminated when the loan was paid in full.[2] Since there was no true assignment of the rents to CSFB, the rents – and therefore the retainer – are property of the Debtor's bankruptcy estate, and not CSFB's property.

CSFB asserts alternatively that even if the rents are an asset of the estate, it has

---

[2] *Jewish Center for Aged v. BSPM Trustees, Inc.*, 295 S.W.3d 513, 523 (Mo. Ct. App. 2009) ("The assignment of rents clause contained within a deed of trust does not by itself effect an absolute conveyance of rents to the assignee; something more must occur before the assignee activates the right to receive the rents.") (citation and internal quotation marks omitted); *In re South Pointe Assocs.*, 161 B.R. 224, 226, n.1 (Bankr. E.D. Mo. 1993) (distinguishing Missouri as a "lien theory" state from those states which recognize an automatic transfer of an absolute assignment of rents upon the occurrence of a specific condition). CSFB cited *C&M Developers, Inc. v. Berbiglia, Inc.*, 585 S.W.2d 176, 181-82 (Mo. Ct. App. 1979) for the proposition that Missouri would appear to recognize the distinction between an absolute assignment of rents and the pledging of rents as "collateral security." However, not only did that court conclude that the pledge in that case was, in fact, a security, the assignment there was made in connection with a lease, not a mortgage. CSFB cited no case in which a Missouri Court has validated a pure assignment of rents under a mortgage, and *Jewish Center for the Aged* recently confirmed that an assignment of rents clause does not by itself effect an absolute conveyance.

a perfected security interest in them and, thus, the retainer. I note here that the Debtor has never expressly agreed on the record that CSFB has a perfected security interest in the rents being collected postpetition, but has proceeded, particularly in connection with cash collateral issues, as if that is true. Since the retainer came from rents, CSFB asserts that the money being held in MRS&B's trust account, which is the proceeds of rents collected prior to the bankruptcy, is also its collateral. Debtor has never conceded that funds representing the proceeds of rents collected prepetition are CSFB's collateral.

CSFB asserted in its Objection to the Application for fees that the retainer constitutes its cash collateral pursuant to § 363, and that it does not consent to the Debtor's use of the cash collateral to pay fees. At the hearing on the Application, MRS&B asserted that the prepetition rents are not "cash collateral," inasmuch as "cash collateral" is a distinctly bankruptcy concept, and the funds involved here came to the Debtor, and were paid to MRS&B, prepetition.

Section 363(a) defines "cash collateral" to mean, in relevant part:

> cash, negotiable instruments, . . . . deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property . . . whether existing before or after the commencement of a case under this title.[3]

---

[3] 11 U.S.C. § 363(a).

5

Although counsel for CSFB stated at the hearing that it was not asserting that the retainer constituted "bankruptcy cash collateral" (which appears to be a change in position from that taken in its Objection), courts have held that rents received from a mortgaged property, either before or after a bankruptcy filing, are cash collateral to the extent they are subject to a security interest or lien.[4] Courts have also held that a lender's security interest may also extend to rents that have been paid over prepetition to debtor's counsel as a retainer for services to be performed in a bankruptcy case.[5]

Section 363(a) plainly contemplates that "cash collateral" includes rents, proceeds, and other cash equivalents, "*whether existing before or after the commencement of the case*," which would include money sitting in a bank account and a prepetition retainer. However, that is true only to the extent that such funds are subject to a security interest or lien. Thus, the threshold issue here is whether CSFB has a perfected lien in the funds constituting the retainer.

As stated, CSFB's claimed interest in the retainer stems from its claimed

---

[4] *See, e.g., In re 1560 Wilson Boulevard L.P.*, 206 B.R. 819, 823, 824 (Bankr. E.D. Va. 1996).

[5] *Id.* at 824. *See also Stearns Building v. WHBCF Real Estate* (*In re Stearns Building*), 165 F.3d 29 (Table), 1998 WL 661071 at *6 (6th Cir. Sept. 3, 1998) ("In sum, since the retainer constitutes property of the estate and [the lender] has a security interest in pre- and post-petition rents, the retainer – while paid from pre-petition rents – still constitutes part of [the lender's] 'cash collateral' and thus cannot be used unless [the lender] is given adequate protection for such use."); *In re Buttermilk Towne Ctr., LLC*, 442 B.R. 558 (B.A.P. 6th Cir. 2010)).

interest in the rents. In Missouri,[6] security interests in rents are unique. Generally speaking, Article 9 of the Uniform Commercial Code excepts from its purview security interests in rents.[7] Rather, security interests in rents are generally granted through an assignment of rents, either in the deed of trust or in a separate document, which is recorded with the county recorder's office.

However, unlike other security interests in real estate, an assignment of rents clause "lies dormant until certain steps are taken to activate, or perfect, such assignment."[8] In addition to proper documentation and the recording of the assignment documents, the assignment only becomes fully perfected after default and either possession of the premises, or an action equivalent to possession, by the assignee.[9] Only after such steps have been taken may the assignee collect rents directly from tenants.[10] Until such steps are taken, a judgment creditor can garnish the

---

[6] Bankruptcy Courts must look to state law to determine the nature and validity of a security interest in rents. *Id.* at 823 (citing *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). The property is located in Missouri, and the Deed of Trust and Assignment of Rents provide that Missouri law applies to those documents.

[7] *See* Mo. Rev. Stat. § 400.9-109(d)(11) (providing that, with certain exceptions, Article 9 does not apply to "[t]he creation or transfer of an interest in or lien on real property, including a lease or rents thereunder. . . .").

[8] *In re Mews Assocs., L.P.*, 144 B.R. 867, 868 (Bankr. W.D. Mo. 1992). *See also Jewish Center for Aged v. BSPM Trustees, Inc.*, 295 S.W.3d 513, 523 (Mo. Ct. App. 2009).

[9] *Id.* at 868-69; *Jewish Center for Aged*, 295 S.W.3d at 523.

[10] *Id.* at 868.

rents in the hands of the tenants.[11]

There has been no evidence, or even a suggestion, that CSFB perfected its security interest in the rents by notifying tenants to pay it directly, or taking any other steps to take possession of the premises, such as the appointment a receiver. To the extent that CSFB asserts a perfected security interest in the rents by virtue of its Deed of Trust and Assignment of Rents, I find that such interest was not fully perfected at the time the petition was filed because CSFB had not taken the activation step.[12]

Up until now, the focus in this case, particularly in connection with the cash collateral issue, has been on the ongoing rents and the right to collect them from the tenants. In contrast, MRS&B's retainer came from rents which were paid by the tenants to the Debtor before bankruptcy, which the Debtor had deposited into its bank account, and then paid over to MRS&B. This distinction is important. Generally speaking, I interpret the term "rents" to mean money owed to a property owner by its tenants under leases, which has been the focus of the cash collateral disputes in this

---

[11] *Id.* at 869.

[12] Cases finding to the contrary generally come from jurisdictions which have eliminated the "activation" requirement. *See, e.g., In re Woodfield Gardens Assoc.*, 1998 WL 276453 (Bankr. N.D. Ill. 1998) (debtor conceded that lender had a perfected lien in the rents; Illinois Statute, 765 Ill. Comp. Stat. 5/31.5(b), provides that if an assignment of rents is recorded, then the interest in rents is perfected without the assignee taking any other affirmative action); *In re 1560 Wilson Blvd., L.P.*, 206 B.R. 819 (Bankr. E.D. Va. 1996) (Virginia Statute, Va. Code Ann. § 55-220.1, provides that the recording of the instrument fully perfects the interest of the assignee without taking further action).

case. Once collected and deposited into a bank account, "rents" are no longer "rents," much in the same way that "accounts receivable" are no longer "accounts receivable" once collected. Regardless of whether a recorded assignment of rents can be used to claim a security interest in proceeds, CSFB did not perfect its security interest in either rents or proceeds by virtue of the Assignment of Rents, as stated.

That being the case, CSFB could have perfected its interest in the funds by filing a UCC Statement concerning proceeds of rents, the Debtor's accounts, or other intangibles in accordance with Article 9 of the Uniform Commercial Code. CSFB offered no evidence that it has any such UCC Statement on file covering the proceeds of the rents or the Debtor's accounts.[13] That being the case, CSFB has not proven that it has any perfected security interest in the proceeds of its rents, whether in the Debtor's bank accounts, in the form of a retainer, or otherwise.

The purpose of perfection of a security interest in any form of property – real, personal or otherwise – is to put third parties on notice of such security interest. Rents present a particular challenge in this regard because they have characteristics of both real property and money. That is why, as I stated above, rents should be viewed differently once they are paid and no longer tied to the real property from which they

---

[13] CSFB offered no evidence at the hearing on MRS&B's Application, but referred the Court to Document #21, and its exhibits, for its evidence of perfection. Document #21 is CSFB's Objection to the Debtor's Motion for Use of Cash Collateral. Its exhibits do not include a UCC Financing Statement.

9

come. In other words, if a lender wanted to make a loan to the Debtor and take a security interest in the rents owed to it by its tenants, that lender would rightly look to the real property records at the recorder's office to see if someone else had a prior security interest in those rents. If, on the other hand, the lender wanted to take a security interest in the money being held in the Debtor's bank accounts, the lender would logically look to UCC filings, and should not be expected to determine what real property the Debtor owns and then search the real property records to see if someone claims an interest in a bank account representing rents from that real property. Section 544(a) of the Bankruptcy Code puts a bankruptcy trustee or Chapter 11 debtor[14] in the same position as such a creditor without knowledge of the existence of unperfected security interests. If a lender wishes to acquire and perfect a security interest in rents, as well as the proceeds of rents after they have been paid over to the landowner, such a lender should both record an assignment of rents with the recorder's office, and file a UCC financing statement. I therefore disagree with *In re Scottsdale Medical Pavilion*, which held that a perfected security interest in rents as filed with the recorder's office was sufficient to capture rent proceeds being held in an account.[15]

---

[14] *See* 11 U.S.C. § 1107.

[15] *In re Scottsdale Medical Pavilion*, 159 B.R. 295, 298 (B.A.P. 9th Cir. 1993) (holding that "rents" retain their character as "rents," even after they have been paid to the debtor).

Since CSFB's security interest in the rents by virtue of the recorded Assignment of Rents was not perfected, and since it offered no evidence that it has a perfected security interest in the funds by virtue of a UCC filing, it cannot prevail as against a lender without knowledge of its unperfected security interest, regardless whether such a lender actually exists.

ACCORDINGLY, the Application by McDowell Rice Smith & Buchanan for Allowance of Compensation for Services Rendered and for Reimbursement of Actual and Necessary Expenses is GRANTED. The Objection by Creditor CSFB 2001-CP4 GLADSTONE COMPLEX LLC ("CSFB") to such Application is OVERRULED.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 8/24/2012